http://www.va.gov/vetapp16/Files4/1630482.txt

Citation Nr: 1630482 
Decision Date: 07/29/16 Archive Date: 08/04/16

DOCKET NO. 08-01 587 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas

THE ISSUES

1. Entitlement to an initial evaluation in excess of 30 percent for posttraumatic stress disorder (PTSD) prior to September 1, 2012, and in excess of 70 percent thereafter (excluding periods during which temporary total evaluations have been assigned).

2. Entitlement to a total disability evaluation based upon individual unemployability due to service-connected disabilities (TDIU) prior to June 25, 2012.

REPRESENTATION

Appellant represented by: Texas Veterans Commission

WITNESS AT HEARING ON APPEAL

Appellant
ATTORNEY FOR THE BOARD

Christopher Murray, Counsel

INTRODUCTION

The Veteran had active military service from July 1966 to April 1969. His awards and decorations include, among others, the Purple Heart Medal.

This case comes before the Board of Veterans' Appeals (Board) on appeal of a March 2007 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas.

The Veteran testified before the Board in May 2010. A transcript of the hearing is of record.

This case was most recently before the Board in November 2012, at which time the appeal was remanded to the Agency of Original Jurisdiction (AOJ) for further development.

Clarification of Issue On Appeal

The Veteran has been assigned temporary total evaluations for his service-connected PTSD from June 25, 2012, to August 31, 2012, and from September 16, 2013, to November 30, 2013. As the Veteran has been assigned the highest possible evaluation for this disability during these periods, the decision below will neither address these periods nor disturb the previously awarded total evaluations. See generally AB v. Brown, 6 Vet. App. 35, 38 (1993). 

FINDINGS OF FACT

1. The Veteran's PTSD is manifest throughout the appeal period by symptoms including anxiety, depression, irritability, and outbursts of anger; such symptoms, along with related polysubstance abuse, results in occupational and social impairment with deficiencies in most areas, but not does not result in total occupational and social impairment.

2. The Veteran meets the schedular criteria for TDIU; the competent and credible evidence of record is at least in equipoise as to whether the Veteran's service-connected disabilities prevent him from securing and following substantially gainful employment throughout the appeal prior to June 25, 2012.

CONCLUSIONS OF LAW

1. The criteria for an evaluation of 70 percent for PTSD have been met for the entire period prior to September 1, 2012; the criteria for an evaluation greater than 70 have not been met at any point during the appeal period. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.130, Diagnostic Code 9411 (2015).

2. The criteria for the assignment of a TDIU have been met throughout the appeal period prior to June 25, 2012. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 3.102, 4.16 (2015)

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist
 
When VA receives a complete or substantially complete application for benefits, it must notify the claimant of the information and evidence not of record that is necessary to substantiate a claim, which information and evidence VA will obtain, and which information and evidence the claimant is expected to provide. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015). See also Quartuccio v. Principi, 16 Vet. App. 183 (2002); Pelegrini v. Principi, 18 Vet. App. 112 (2004).
 
The Veteran has been provided notice letters throughout the appeal that address all notice elements required. There has been no allegation of notice error in this case. See Shinseki v. Sanders/Simmons, 556 U.S. 396 (2009). 
 
VA must also make reasonable efforts to assist the appellant in obtaining evidence necessary to substantiate the claim for the benefit sought, unless no reasonable possibility exists that such assistance would aid in substantiating the claims. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159 (2015).
 
Service treatment records are associated with claims file. All post-service treatment records identified by the Veteran have also been obtained. VA's duty to assist the Veteran in locating additional records has been satisfied. The Veteran has been afforded a number of VA examinations in conjunction with his appeal. See 38 U.S.C.A. § 5103A(d); see also 38 C.F.R. § 3.159(c)(4) (2015); Wells v. Principi, 327 F.3d 1339, 1341 (Fed. Cir. 2002). These VA examinations are adequate for the purposes of the instant appeal, as they involved a review of the Veteran's pertinent medical history as well as a clinical evaluation of the Veteran, and provide an adequate discussion of relevant symptomatology and functional effects of the Veteran's disability. See generally Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). 
 
As noted above, the instant appeal has been previously remanded, in July 2010 and November 2012. The Board finds there has been substantial compliance with the Board's remand directives. See Stegall v. West, 11 Vet. App. 268, 271 (1998). Finally, as noted above, the Veteran was provided a hearing before the Board in May 2010. The Board finds that the undersigned Veterans Law Judge complied with the duties set forth in 38 C.F.R. § 3.103(c)(2) and adjudication of the Veteran's appeal may proceed. See Bryant v. Shinseki, 23 Vet. App. 488 (2010).
 
In light of the foregoing, the Board is satisfied that all relevant facts have been adequately developed to the extent possible; no further assistance to the appellant in developing the facts pertinent to the issue on appeal is required to comply with the duty to assist. 38 U.S.C.A. §§ 5103 and 5103A; 38 C.F.R. § 3.159.

Analysis

I. PTSD

Disability evaluations are determined by comparing a Veteran's present symptomatology with criteria set forth in the VA's Schedule for Rating Disabilities (Rating Schedule), which is based on average impairment in earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. When a question arises as to which of two ratings apply under a particular diagnostic code, the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. 38 C.F.R. § 4.3. The Veteran's entire history is reviewed when making disability evaluations. See generally, 38 C.F.R. 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995).

Evidence to be considered in the appeal of an initial assignment of a disability rating is not limited to that reflecting the then current severity of the disorder. Fenderson v. West, 12 Vet. App. 119 (1999). In Fenderson, the Court also discussed the concept of the "staging" of ratings, finding that in cases where an initially assigned disability evaluation has been disagreed with, it was possible for a veteran to be awarded separate percentage evaluations for separate periods based on the facts found during the appeal period. Fenderson at 126-28; see also Hart v. Mansfield, 21 Vet. App. 505 (2007).

The March 2007 rating decision on appeal awarded service connection for PTSD, and assigned an initial evaluation of 30 percent pursuant to 38 C.F.R. § 4.130, Diagnostic Code 9411 (2015). Through subsequent rating actions throughout the appeal, his disability evaluation for PTSD has been increased to 70 percent, effective September 1, 2012 (excluding periods during which temporary total evaluations have been assigned). The Veteran asserts a higher evaluation is warranted throughout the appeal period.

Diagnostic Code 9411 is subsumed into the General Rating Formula for Mental Disorders (General Rating Formula). Under the General Rating Formula, a 30 percent evaluation contemplates occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, or mild memory loss (such as forgetting names, directions, and recent events). Id. 

A 50 percent evaluation is warranted where the disorder is manifested by occupational and social impairment with reduced reliability and productivity due to such symptoms as flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory for example, retention of only highly learned material, forgetting to complete tasks; impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. Id.

A 70 percent evaluation is warranted where the disorder is manifested by occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking or mood, due to such symptoms as suicidal ideation; obsessional rituals which interfere with routine activities; speech that is intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control, such as unprovoked irritability with periods of violence; spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances, including work or a work-like setting; and an inability to establish and maintain effective relationships. Id.

A 100 percent disability evaluation is warranted when there is total occupational and social impairment, due to such symptoms as: persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time and place; memory loss for names of close relatives, own occupation, or own name. Id.

Prior to August 4, 2014, the nomenclature employed in the rating schedule is based upon the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, of the American Psychiatric Association (also known as "the DSM-IV"). 38 C.F.R. § 4.130 (2014). The DSM-IV contains a Global Assessment of Functioning (GAF) scale, with scores ranging between zero and 100 percent, representing the psychological, social, and occupational functioning of an individual on a hypothetical continuum of mental health-illness. See Carpenter v. Brown , 8 Vet. App. 240, 242 (1995).

The DSM-IV contemplates that the GAF scale will be used to gauge a person's level of functioning at the time of the evaluation (i.e., the current period) because ratings of current functioning will generally reflect the need for treatment or care. While GAF scores are probative of the Veteran's level of impairment, they are not to be viewed outside the context of the entire record. Therefore, they will not be relied upon as the sole basis for an increased disability evaluation.

Notably, effective August 4, 2014, VA regulations were amended to remove references to the DSM-IV, and to replace them with references to the Fifth Edition of the same treatise (DSM-5). 79 Fed. Reg. 45,093-02, 45,094 (August 4, 2014). DSM-5 abandoned the GAF score as a tool for evaluating the severity of psychiatric disorders. The current appeal was certified to the Board before August 4, 2014, the effective date of the regulatory change. Because the regulatory change implementing the DSM-5 criteria applies only to applications for benefits pending before the AOJ on or after August 4, 2014, the Board will consider the GAF scores of record in spite of the regulatory change.

Finally, disability evaluations are assigned according to the manifestations of particular symptoms. However, the use of the phrase "such as" in 38 C.F.R. § 4.130 demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, but rather are to serve only as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. Mauerhan v. Principi, 16 Vet. App. 436 (2002). The evidence considered in determining the level of impairment under § 4.130 is not restricted to the symptoms provided in the Diagnostic Code. Instead, VA must consider all symptoms of a claimant's condition that affect the level of occupational and social impairment, including, if applicable, those identified in the DSM-IV.

VA treatment records indicate that, in February 2006, just prior to the appeal period, the Veteran was taken to VA Urgent Care for symptoms of PTSD, including loading weapons with thoughts of hurting someone, depression, and flashbacks. The following day, the Veteran was noted to be suffering from symptoms of PTSD with associated paranoia, depression, and cocaine, marijuana, and alcohol abuse. He complained of frequent nightmares, flashbacks, reliving experiences associated with autonomic arousal, and avoidance. He reported still feeling homicidal and depressed, and was willing to try an antidepressant. During this mental health admission, he was noted to have anxiety triggered by trauma-related phenomena, flashbacks, intrusive traumatic memories, nightmares of his trauma, and anger control problems. His GAF score was noted to be 25 at admission, representing behavior that is considerably influenced by delusions or hallucinations, serious impairment in communication or judgment, or an inability to function in all areas. See DSM-IV. Upon discharge, his GAF score was noted to be 55, indicating moderate symptomatology with moderate difficulty in social, occupational, or school functioning. Id.

At an August 2006 VA examination, the Veteran reported having flashbacks four to five times a week, and stated that he had recent lost his job due to attitude and attendance problems. He also indicated that his PTSD symptoms have pervaded his romantic involvements. On examination, the Veteran spoke in a very low voice tone and acted somewhat peculiarly and hyperactive with strained facial feature as if he were uneasy with the examination process. His thought processes were logical, coherent and relevant, and he presented as a well-dressed and well-groomed, though his social skills were noted to be poor. A review of psychological symptoms included anxiety, depression, insomnia, appetite disturbance, crying spells, and nightmares. He also indicated anger control problems, but denied having hallucinations or delusions. The VA examiner opined that the Veteran was no longer employed due to his personality features and substance abuse problems, and not "simply his PTSD." The VA examiner opined that the Veteran's impulse control disorder and cocaine abuse are not associated with his PTSD, and assigned a GAF score of 65 based on PTSD alone, representing some mild symptoms or some difficulty in social or occupational functioning, but generally functioning pretty well. See DSM-IV.

Subsequent VA treatment records indicate the Veteran entered rehabilitation at VA facilities to treat his substance abuse problems in both September 2006 and November 2007 and, during these periods, faced an increase in PTSD symptomatology, including anxiety and social isolation with difficulty in groups and anger outbursts. A mental residual functional capacity assessment, completed in approximately March 2007 in conjunction with the Veteran's application for Social Security Administration (SSA) disability benefits, indicates the Veteran's PTSD resulted in a moderately limited ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. In addition, moderate limitations were noted on the Veteran's ability to accept instructions and respond appropriate to criticism from supervisors, and the ability to respond appropriately in the work setting.

At a September 2007 VA examination, the Veteran reported medications help him with his sleep and denied nightmares, but he indicated he was having bad flashbacks, though they were less severe than previously. He reported that news of the Iraq war would trigger memories from Vietnam and, instead of physical altercations, he usually just yells and feels angry. He reported having a few friends he stays in contact with, but stays to himself mostly without much social interaction. On examination, the Veteran was noted to have poor social skills, and showed signs of difficulty with concentration, short term memory, and was a poor historian for events in long term memory. The examiner noted that these memory problems were more likely than not accounted for by his heavy substance abuse. The Veteran was found to have a significant depressed mood and history of explosive anger outbursts and periodic physical aggression. Along with cocaine abuse, the Veteran was diagnosed with mild PTSD with impulse control disorder, and assigned a GAF score of 50, representing serious symptoms or serious impairment in social or occupational functioning. See DSM-IV.

In September 2008, the Veteran presented with minimal to moderate depression, sleep disturbance, and some flashbacks. He was found to have a depressed and irritable mood, constricted affect, and poor insight and judgment, related primarily to his substance abuse. See September 2008 VA Mental Health Attending Note. In April 2010, the Veteran was noted to have a bland mood and blunted affect, but denied perceptual disturbances and suicidal and homicidal ideation, with intact recent and remote memory. He was found to suffer from PTSD, moderate major depression, cannabis abuse, and assigned a GAF score of 45, representing serious symptoms and impairment on social and occupational functioning. See April 2010 VA Mental Health Note. 

At a December 2010 VA examination, the Veteran reported that everyone in his life understands where he has been and where he is going, and that he does not tolerate negative people in his life. He also reported enjoying watching sports and playing poker with a few close friends. The examiner noted that the Veteran's PTSD resulted in a diminished interest/participation in activities and feelings of detachment/estrangement from others by isolating himself. He was also noted to have difficulty falling or staying asleep with irritability or outbursts of anger. The VA examiner noted that the Veteran's abuse of marijuana is a maladaptive coping strategy that is often used by individuals with PTSD as a means of numbing the symptoms and feelings caused by their disorder.

At a March 2011 VA examination, the Veteran reported hearing a voice from the past "life from Nam." He was casually dressed and appropriately groomed, with an "ok" mood and anxious affect. With regards to suicidal or homicidal thoughts, the Veteran stated he sometimes things of "tired of the rat race," but denied plan or intent. His ability to maintain personal hygiene and other activities of daily living remained intact, and his was oriented in all spheres without memory loss or impairment. The VA examiner noted a diagnosis of PTSD and cannabis and cocaine abuse, and assigned a GAF score of 55, representing moderate symptomatology. See DSM-IV. 

In January 2013, the Veteran was noted to suffer from PTSD, severe major depressive disorder, and polysubstance abuse. See January 2013 Mental Health Outpatient Treatment Plan. He was noted to suffer from depressive and anxiety symptoms with irritability or anger control problems. In April 2013, the Veteran presented as extremely anxious and angry, with a labile affect and terse speech. His breathing was rapid and shallow, and he had trouble gathering his thoughts. He seemed distressed at his family's reports of how his past actions have had a negative impact, and stated that he did not remember doing the things he had been told about. He reported that, at the time, he didn't care about the thoughts and crowds anymore, but only cared about figuring out how he could have done these negative things toward his family. See April 2013 VA Mental Health Outpatient Note.

Finally, the Veteran was provided another VA examination in June 2015, at which it was noted his PTSD resulted in symptoms of anxiety, suspiciousness, chronic sleep impairment, mild memory loss, impaired judgment, difficulty in establishing and maintaining effective work and social relationships, and difficulty in adapting to stressful circumstances. The examiner determined the Veteran's PTSD results in occupational and social impairment with deficiencies in most areas. Importantly, the VA examiner referred to earlier VA treatment records in noting that the Veteran's misuse of substances was to control the affect associated with PTSD and, the little substances the Veteran continues to use, he does so to help cope with PTSD symptomatology. A GAF score of 45 was assigned, representing serious symptoms, and the examiner determined that the Veteran's PTSD would prevent him from maintaining gainful employment due to symptoms such as hypervigilance and irritability, depression, and low concentration. 

Initially, in determining the severity of the Veteran's PTSD, the Board finds that, despite the August 2006 VA examiner's opinion, a majority of the competent evidence of record indicates that the Veteran's substance abuse issues are related to his PTSD, specifically as a means of coping with associated symptomatology. See, e.g., September 2006 VA Progress Note; see also December 2010 and June 2015 VA examination reports. Therefore, as the two are related, the Board will also take into account the effect of the Veteran's substance abuse conditions, including multiple attempts at rehabilitation, in its determination of an appropriate initial evaluation for PTSD.

In considering the evidence discussed above, and resolving all doubt in the Veteran's favor, the Board finds that the Veteran's PTSD with associated depression and substance abuse results in serious symptomatology with severe impairment on his social and occupational functioning. Not only has the Veteran displayed many episodes of anxiety, irritability, and outbursts of anger, but his GAF scores, with few exceptions, have remained in the mid-40s to low-50s, primarily representing serious symptomatology. As such, the Board finds that, excluding periods for which a temporary total evaluation has previously been assigned, an initial evaluation of 70 percent for the Veteran's PTSD is warranted throughout the appeal period.

The Board has considered whether a schedular 100 percent evaluation is warranted at any stage of the appeal. However, a preponderance of the evidence is against a finding that the Veteran's PTSD has resulted in total occupational and social impairment at any point during the appeal. For example, while the Veteran reported social isolation, he also reported having a few friends with which he watched sports and played poker. Further, more recent, he has shown regret at his past actions which may have damaged his relationships with his family. This evidence demonstrates that the Veteran is not totally socially impaired and, thus, a 100 percent evaluation is not warranted under the General Rating Formula.

In assigning a 70 percent evaluation throughout the appeal period, the Board acknowledges that the Veteran displays few of the symptoms associated with such an evaluation as discussed by the General Rating Formula. For example, there are few episodes of suicidal or homicidal ideation, obsessional rituals, near-continuous panic or depression which affects the ability to function independently, spacial disorientation, or a neglect of personal appearance and hygiene. However, as noted above, it is the effect the Veteran's disability has on his occupational and social functioning, as opposed to the symptoms displayed, on which the Board must base it's decision. See Mauerhan, 16 Vet. App. 436.

Accordingly, resolving all doubt in the Veteran's favor, the Board concludes that an initial evaluation of 70 percent, but not greater, is warranted for the Veteran's PTSD at all stages of the appeal, excluding periods for which a temporary total evaluation has previously been awarded. See 38 U.S.C.A. § 5107 (West 2014).

As a final note, the Board also has considered whether the Veteran is entitled to a greater level of compensation on an extra-schedular basis. The rating criteria pertaining to mental disorders contemplates the effects of the service-connected disability on the Veteran's occupational and social functioning. The symptoms associated with the Veteran's PTSD, including anxiety, irritability with anger outbursts, social isolation, and depression, are contemplated by the rating criteria. The evidence of record fails to show anything unique or unusual about the Veteran's condition that would render the schedular criteria inadequate. Further, there are no additional service-connected disabilities that have not been attributed to a specific service-connected condition. Referral for consideration of an extraschedular rating is not warranted either based on symptoms related to service-connected bilateral hearing loss, or on a disability that can be attributed only to the combined effect of multiple conditions. See Thun v. Peake, 22 Vet. App. 111 (2008); see also Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014). 

II. TDIU Prior to June 25, 2012

Entitlement to a TDIU requires the presence of impairment so severe that it is impossible for the average person to follow a substantially gainful occupation. Consideration may be given to the Veteran's level of education, special training, and previous work experience in arriving at a conclusion, but not to age or to the impairment caused by nonservice-connected disabilities. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 3.340, 3.341, 4.16, 4.19 (2015). In reaching such a determination, the central inquiry is "whether the Veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993).

The record must reflect that circumstances, apart from non-service-connected conditions, place the claimant in a different position than other veterans having the same compensation rating. The sole fact that a claimant is unemployed or has difficulty obtaining employment is not enough. A high rating in itself is recognition that the impairment makes it difficult to obtain or keep employment. The ultimate question is whether the Veteran, in light of his service-connected disabilities, is capable of performing the physical and mental acts required by employment, not whether he can find employment. Van Hoose v. Brown, 4 Vet. App. 361 (1993).

The law provides that a total disability rating may be assigned where the schedular rating is less than total, when the person is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that, if there is only one such disability, this disability shall be ratable at 60 percent or more, or if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more and sufficient additional disability to bring the combined rating to 70 percent or more. See 38 C.F.R. § 4.16(a). For the purpose of one 60 percent disability or one 40 percent disability in combination, disabilities resulting from a common etiology will be considered as one disability. See 38 C.F.R. § 4.16(a)(2) (2015). 

As discussed above, the Board has assigned an evaluation of 70 percent for the Veteran's PTSD throughout the appeal period. Therefore, the Veteran is eligible to receive TDIU benefits throughout the period prior to June 25, 2012. See 38 C.F.R. § 4.16(a).

For reasons stated immediately below, the Board finds that the evidence of record demonstrates that the Veteran's service-connected disabilities, in particular his PTSD, rendered him unable to secure and follow a substantially gainful occupation prior to June 25, 2012.

Significantly, the Veteran became unemployed just prior to the appeal period, citing attitude and attendance problems. See, e.g., August 2006 VA examination report. The VA examiner opined that the Veteran was not unemployed simply because of his PTSD alone, but also because of his personality features as well as his substance abuse problems. A November 2007 VA examination report also relates his unemployability to an extensive history of substance abuse, noting he has "burned a lot of bridges" because of his substance abuse problems. A March 2011 VA examination notes there is occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks due to symptoms.

As discussed above, the evidence relates the Veteran's history of substance abuse to his PTSD, primarily as a coping mechanism. Thus, to the extent the evidence of record relates the Veteran's unemployability as more due to his polysubstance abuse as opposed to simply his PTSD, the Board will consider both in its determination of entitlement to a TDIU. Based on the VA examination reports discussed above, as well as the multiple substance abuse rehabilitation admissions of record, the Board finds that a TDIU is warranted in this case. The Veteran meets the schedular criteria for a TDIU throughout the appeal period prior to June 25, 2012, and the overall weight of the evidence is at least in equipoise as to whether the Veteran's service-connected PTSD with associated depression and polysubstance abuse precludes him from performing the physical and mental acts required by employment.

A Veteran "need only demonstrate that there is an 'approximate balance of positive and negative evidence' in order to prevail." Gilbert v. Derwinski, 1 Vet. App. 49 (1990). Entitlement need not be established beyond a reasonable doubt, by clear and convincing evidence, or by a fair preponderance of the evidence. Under the benefit of the doubt doctrine established by Congress, when the evidence is in "relative equipoise, the law dictates that the Veteran prevails." Id. 

In light of the evidence discussed above, and resolving all doubt in favor of the Veteran, the Board finds entitlement to a TDIU throughout the period prior to June 25, 2012, is warranted in the instant case.

ORDER

An initial evaluation of 70 percent, but not greater, for PTSD is granted throughout the appeal period, excluding periods for which a temporary total evaluation has been previously assigned.

Entitlement to a TDIU prior to June 25, 2012, is granted.

____________________________________________
CHERYL L. MASON
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs